Ryan G. Baker (Bar No. 214036)
 rbaker@bakermarquart.com
Christian A. Anstett (Bar No. 2401795)
 canstett@bakermarquart.com
BAKER MARQUART LLP
10990 Wilshire Boulevard, Fourth Floor
Los Angeles, California 90024
Telephone:  (424) 652-7800
Facsimile:   (424) 652-7850

Attorneys for Plaintiff
LABC Productions, LLC

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LABC PRODUCTIONS, LLC, a California limited liability company,<br><br>          Plaintiff,<br><br>     vs.<br><br><br>USSE CORP. d/b/a Union Square Agency, a Nevada corporation; Lincoln Computer Services, LLC, a New York limited liability corporation; Gary Cioffi, an individual; Shawn Garrity, an individual; and DOES 1-10,<br><br>          Defendants. | Case No.: 2:15-cv-02352<br><br>**FIRST AMENDED COMPLAINT:**<br><br>**(1) Breach of Contract;**<br>**(2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and**<br>**(3) Fraud** |

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

## Introduction

1.  In March 2011, Plaintiff LABC Productions, LLC ("LABC") contracted with USSE Corp. d/b/a Union Square Agency ("Union Square" or "USSE") for the production of an original episodic television series, *Gone Until December*." Unfortunately, the only thing "gone" was several hundred thousand dollars invested by LABC.  Union Square never provided LABC with any of the content contemplated by the contract.

2.  LABC has recently learned that USSE was not a legitimate corporation; instead, it was part of a long-running fraudulent scheme involving numerous sham corporate entities set up by Shawn Garrity and Gary Cioffi.  Garrity and Cioffi established USSE to improperly divert corporate assets – including, specifically, LABC's investment, for their own personal use.  Throughout Union Square's existence, Garrity and Cioffi looted USSE and inappropriately diverted its assets to enrich themselves directly or through investment in other projects.  Garrity and Cioffi's plunder eventually caused USSE to fail before completing "Gone Until December."

3.  Garrity and Cioffi's actions materially impacted USSE's ability to perform its contract with LABC.  The USSE employees tasked with producing content for LABC were constantly denied the funding necessary to complete the project.  On information and belief, the payments made by LABC to USSE were largely if not entirely diverted for Cioffi and Garrity's personal use or used to conceal prior thefts and self-dealing by Cioffi and Garrity.

4.  Garrity and Cioffi never repaid LABC any of the money they misappropriated, and they have continued to attempt to conceal their fraudulent scheme.  On information and belief, after they shut USSE down, Garrity and Cioffi ensured that the email records, business and banking documents, and other evidence of their fraud was destroyed.  Garrity and Cioffi destroyed USSE business documents at a time when they knew or should have reasonably expected litigation against USSE

FIRST AMENDED COMPLAINT

1   concerning its many outstanding debts.  As a result of their concealment, LABC did

2   not learn of Cioffi and Garrity's fraud until it took discovery in a prior lawsuit against

3   USSE.

4        5.   It now appears that the only production Union Square provided LABC

5   was the fiction that Union Square was a legitimate business interested in actually

6   producing a television series.  LABC seeks compensation for the damages it has

7   incurred as a result of Garrity and Cioffi's fraud.

8   <u>**The Parties**</u>

9        6.   Plaintiff LABC is a California limited liability company.  LABC, based

10   in El Segundo, California, licenses programming for broadcast and theatrical release.

11        7.   Defendant USSE Corp. is a Nevada Corporation that did business as

12   Union Square Agency.  Union Square claimed to produce film and television

13   programs.  On information and belief, Union Square has not operated as a going

14   concern since on or about June 2012.  On information and belief, the legal entity

15   USSE is presently owned by its former attorney  Joshua Brinen of Brinen &

16   Associates ("Brinen").  Brinen received transfers of shares from USSE's former

17   owners and executives in exchange for unpaid legal fees.  On information and belief,

18   Brinen has not operated USSE since assuming ownership and intends to take the

19   entity into bankruptcy proceedings at some point in the future.  USSE defaulted in the

20   Prior Lawsuit, although LABC ultimately dismissed USSE without prejudice.

21        8.   Defendant Gary Cioffi is an individual residing in New York.  Cioffi is

22   USSE's former CEO, on the USSE Board, and owned a substantial percentage of

23   USSE shares.  On information and belief, Cioffi made the financial decisions for

24   USSE.

25        9.   Defendant Lincoln Computer Services LLC ("Lincoln Computer") is a

26   New York limited liability company that is presently operating.  Cioffi is an investor

27   in Lincoln Computer and may have held executive positions within the company.

28   Lincoln Computer is one of Cioffi's alter egos.

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FIRST AMENDED COMPLAINT

10.     Defendant Shawn Garrity is an individual presently residing in Las Vegas.  Garrity is the former president of USSE, former member of USSE's board, and owned a substantial percentage of USSE shares.  As president of USSE, Garrity's responsibilities included managing the company, providing sales and in his own words his responsibilities "ranged across whatever had to be that [he] had the expertise to manage."  Garrity and Cioffi have been friends for years and, on information and belief, have perpetrated several fraudulent schemes using various business entities with similar or identical executives, employees and investors.  Garrity presently owns and/or operates a marketing company known as Circle TPR.  Cioffi is an investor in Circle TPR, and former USSE chief financial officer Bruce Kerner holds an executive position in the company.  Garrity reported to Cioffi at USSE.

11.     Plaintiff does not presently know the true names and capacities of the defendants sued herein as DOES 1 through 10, and therefore sues those defendants by fictitious names.  Plaintiff will amend this complaint to allege the true identities of DOES 1 through 10 once they have been ascertained.  Plaintiff is informed and believes that each of the defendants sued as DOES 1 through 10 is in some manner responsible for the occurrences, injuries and other damages alleged in this complaint.

12.     Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein, each and every defendant was the agent, servant, employee, joint venturer, partner, subsidiary, and/or co-conspirator of each other defendant and, that in performing or failing to perform the acts herein alleged, each was acting individually as well as through and in the foregoing alleged capacity and within the course and scope of such agency, employment, joint venture, partnership, subsidiary and/or conspiracy, and each other defendant ratified and affirmed the acts and omissions of the other defendants.  Plaintiff is further informed and believes that each defendant, in taking the actions alleged herein and/or ratifying the actions alleged herein, acted within the course and scope of such authority and, at the same time, for

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FIRST AMENDED COMPLAINT

1   their own financial and individual advantage, as well as in the course and scope of

2   such employment, agency and as an alter ego therein.  Both Cioffi and Garrity are the

3   alter egos of USSE and Lincoln Computer.  Cioffi and Garrity commingled personal

4   funds with USSE and Lincoln Computer funds, made substantial personal loans to

5   themselves from the corporations that were never repaid, engaged in sham financings

6   and transactions with other entities designed solely to personally enrich Garrity and

7   Cioffi, paid themselves sham "consulting fees" that were never earned, operated both

8   entities dramatically undercapitalized in relation to the true extent of their debts and

9   liabilities, and altered corporate and accounting records to conceal their looting.

10       13.     Whenever, in this complaint, reference is made to any actions of

11   defendant Union Square, such allegations shall mean that the directors, officers,

12   employees or agent(s) of said entity—including, but not limited to Garrity and

13   Cioffi—did perform or authorize the alleged acts or actively engaged in the

14   management, direction and control of such entity and were acting within the course

15   and scope of their employment.

**Jurisdiction and Venue**

16

17       14.     The Court has subject matter jurisdiction over this action by virtue of the

18   diversity of the parties herein, pursuant to 28 U.S.C. § 1332.

19       15.     The Court has personal jurisdiction over the defendants to this action.

20   Union Square transacted continuous and systematic business in California, and its

21   contract with LABC provides for venue in Los Angeles County.  See Exhibit ("Ex.")

22   A at ¶ 16.  Defendant Garrity travelled to California to negotiate the contract with

23   LABC, and he directed telephonic conferences and email correspondence into the

24   state concerning Union Square business.  Garrity also approved the final terms of the

25   contract with LABC.  Garrity reported directly to Cioffi.  As CEO, Cioffi had

26   ultimate approval over the contract with LABC and, on information and belief, was

27   aware of and expressly approved the License Agreement with LABC. Because he

28   signed the License Agreement and the subverted that contract by looting USSE and

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FIRST AMENDED COMPLAINT

1  causing it to breach its obligations to LABC, Garrity is personally subject to the

2  License Agreement's venue provision.

3      16.   Defendants Garrity and Cioffi also operated Union Square as their alter

4  ego in California.  As jurisdiction is proper over Union Square, it is also proper over

5  its alter egos Cioffi and Garrity, as well as Cioffi's alter ego Lincoln Computer.  *ADO*

6  *Finance AG v. McDonnel Douglas Corp.*, 931 F. Supp. 711, 715 (C.D. Cal. 1996).

7  Lincoln Computer commingled funds with USSE, received improper asset transfers

8  from USSE and played a role in destroying USSE's corporate records to conceal

9  Garrity and Cioffi's fraud.  The jurisdictional minimum of $75,000.00 is also met

10 here, where LABC seeks the $262.000.00 owed to it by defendants under contract, as

11 well as additional punitive and other damages.

12      17.   Venue is proper as the operative contract specified Los Angeles County

13 as the appropriate venue for action against Union Square.  In addition, under 28

14 U.S.C. § 1391(b)(2), a substantial part of the events or omissions giving rise to the

15 claim occurred in Los Angeles County.

16                     **Summary of Factual Allegations**

17                         **The License Agreement**

18      18.   Plaintiff LABC is a subsidiary of DIRECTV Holdings, LLC

19 ("DIRECTV").  DIRECTV is the nation's leading direct broadcast satellite system,

20 delivering hundreds of channels of digital entertainment and informational

21 programming to more than 20 million homes and business equipped with specialized

22 DIRECTV equipment.  DIRECTV also develops its own original content.  Some of

23 that production and/or development is accomplished by LABC.  From time to time,

24 Plaintiff LABC enters into licensing agreements with television production

25 companies in order to obtain original programming content to broadcast on

26 DIRECTV satellite systems.

27      19.   On March 11, 2011, LABC entered into a Program License Agreement

28 with Union Square (the "License Agreement").  A copy of the License Agreement is

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

attached as Exhibit A and incorporated by this reference as if fully set forth.  Under the terms of the License Agreement, Union Square agreed to produce a series entitled *Gone Until December* (the "Program").  The Program was supposed to feature top female surfers touring the world to surf the most sought-after waves and explore exotic locations.  Pursuant to the License Agreement, Union Square agreed to produce ten thirty-minute episodes and a one-hour documentary film.  (Ex. A p. 15.)  Defendant and Garrity negotiated the License Agreement on behalf of Union Square.

20.     In December 2010, Garrity travelled to Los Angeles with Ed Manetta to meet with LABC.  Garrity and Manetta met with Patricia Ishimoto, Jennifer Wysocki and Chris Johnson from LABC.  During the meeting, Garrity proposed the idea of producing a documentary series about female surfers to LABC.  After meeting with LABC, Manetta, Chris Scott and Garrity negotiated a deal between USSE and LABC to produce *Gone Until December* series through email correspondence.  Those negotiations resulted in the License Agreement.  Garrity approved the License Agreement and signed it on behalf of Union Square.  (Ex. A. p. 12.)  On information and belief, Cioffi was aware of USSE's negotiations with LABC and, as CEO, approved of USSE's business relationship with USSE.

21.     In exchange for Union Square's agreement to produce the Program, DIRECTV agreed to pay Union Square $350,000, payable in three installments.  (Ex. A p. 14.)  The first installment of $175,000 was due thirty days after the agreement was executed.  *(Id.)*  The second installment of $87,000 was due thirty days after Union Square delivered acceptable program masters for four episodes and the one-hour documentary.  *(Id.)*  The final installment of $88,000 was due thirty days after Union Square submitted the final masters to DIRECTV.  *(Id.)*

22.     The License Agreement also set forth both production and delivery dates for the masters of each program.  (Ex. A p. 17-18.)  The first episode master was due June 20, 2011, and the final tenth master was due December 29, 2011.  *(Id.)*

BAKER MARQUART LLP
10990 Wilshire Boulevard, Fourth Floor
Los Angeles, California 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FIRST AMENDED COMPLAINT

23.     Section 11.1 of the License Agreement gave LABC the right to terminate the agreement in its sole discretion if Union Square was in material breach of the License Agreement and failed to cure within ten days from receipt of written notice from LABC.

24.     Garrity's role in the *Gone Until December* project was ongoing and involved communications with LABC employees in California.  Garrity worked with Manetta and Scott on the Program and received progress reports on its status.  Garrity also communicated directly with LABC when LABC expressed concerns about the quality of the project.  On information and belief, Garrity reported on these issues to Cioffi.

25.     Garrity signed the License Agreement and the License Agreement contains a jurisdictional clause:

> This Agreement shall be construed in accordance with the laws of the state of California … The parties hereby agree that the jurisdiction of, or the venue of, any action brought by either party shall be in a state or federal district court sitting in Los Angeles, California, and both parties hereby agree to waive any right to contest such jurisdiction and venue.

The License Agreement also provides that USSE would deliver HD video cassettes to LABC in California and would shoot an episode in Huntington Beach, California.

## USSE Is the Alter Ego of Cioffi and Garrity

26.     The Union Square entity was designed to further Cioffi and Garrity's long standing fraudulent scheme.  Prior to founding Union Square,  Cioffi and Garrity operated a group of related entities including MSL Productions LLC ("MSL"), MSL Sports and Entertainment, Inc. ("MSL Sports"), GridIron Bash LLC and Union Square Sports and Entertainment, Inc. ("Union Square Sports") (collectively, the "MSL Entities").  MSL was a marketing and event management company that no longer operates.  The MSL Entities operated with the same employees in the same office space. Corporate employees were often paid by different MSL Entities.  Ed

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FIRST AMENDED COMPLAINT

Manetta worked for MSL Productions LLC and MSL Sports, and would eventually become a vice president of USSE.  Cioffi was CEO and Garrity was president of the MSL Entities.  Bruce Kerner started working for MSL Productions in 2004 and would ultimately become USSE's CFO.   USSE operated out of the same space as the MSL Entities.  Note 6 to USSE's consolidated financial statements states that USSE "leases its space at the Union Square, NYC facility from MSL Financial Services, LLC … the lease requires monthly payments of $23,518 plus variable monthly office expenses and real estate taxes of approximately $1,583."

27.     Garrity and Cioffi treated USSE the MSL Entities as their alter egos, commingling their assets, looting from the company, and fraudulently inducing other businesses to enter into transactions that MSL had no intention to repay or provide the agreed upon performance.  Garrity and Cioffi used USSE to line their own pockets and consistently failed to treat USSE as a distinct entity.  Garrity and Cioffi had corporate American Express cards for USSE.  Cioffi sometimes used his personal credit card to pay for USSE expenses and, on information and belief, used Lincoln Computer credit cards to pay USSE expenses.  Garrity and Cioffi used monies provided to USSE and other corporate entities to fund their lavish lifestyles.  For example, they maintained a private "corporate" apartment in New York City which they shared for most of a year paid for with corporate funds.  Cioffi and Garrity maintained the expensive corporate apartment while their entities lacked funds to pay vendors and employees.  Cioffi also paid USSE's legal defense costs and paid a settlement in a lawsuit on behalf of USSE.[1]

---

[1] That lawsuit was *Medlaurel, Inc. d/b/a Laurel Manufacturers, Inc. v. MSL Productions, LLC, USSE Corp., Union Square Sports and Entertainment, Inc., MSL Sports and Entertainment, LLC, and Gary Cioffi*, Case 1:08-cv-06317 in United States District Court for the District of New Jersey.  In that lawsuit, Plaintiff sought to recover approximately $450,000 in damages for work performed by MSL Productions in addition to damages arising from MSL Productions' and Gary Cioffi's fraudulent misrepresentations and promises, as well as passing bad checks to induce Plaintiff to continue shipping product without receiving payment.  Plaintiff alleged

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FIRST AMENDED COMPLAINT

28.     Cioffi and Garrity formed USSE in order to transfer the MSL Entities' assets without receiving equivalent value in return and avoid various business debts the MSL Entities had incurred.

29.     After founding USSE to avoid MSL debts, Garrity and Cioffi continued their fraudulent scheme of diverting corporate to their personal benefit and commingling their personal assets with USSE and other entities such as Lincoln Computer.  On information and belief, Garrity and Cioffi depleted and looted USSE by, among other things, making substantial personal loans from USSE to Garrity and Cioffi that were never repaid; using funds belonging to USSE to pay for personal expenses such as the remodeling of Cioffi's kitchen; transferring funds and assets from USSE to other entities controlled by Garrity and Cioffi sometimes in the form of loans and sometimes in the form of fictitious "consulting fees" for which USSE received no value; and by paying excessive bonuses to Garrity and Cioffi.  To conceal their looting, Garrity and Cioffi destroyed, concealed, or altered financial records and statements.  To the extent USSE's records still exist, those records are inaccurate.  As a result of Garrity and Cioffi's actions, USSE was dramatically undercapitalized in relation to its liabilities and often experienced dramatic cash flow issues.

30.     Cioffi has some kind of business relationship or ownership interest in Lincoln Computer.  Lincoln Computer's website describes Cioffi as a "co-founder" and investor.  Lincoln Computer provided the computer services for USSE and disconnected USSE's server when USSE closed down.  As such, LABC is informed

that Cioffi made multiple misrepresentations regarding MSL Productions' ability to pay for products.  While making these misrepresentations, Cioffi and MSL allegedly received substantial payments from customers and used those funds to fund another MSL Entity and a project known as GridIron Bash.  Plaintiff also alleged that MSL Productions, LLC, MSL Sports and Entertainment LLC, USSE Corp and Union Square Sports and Entertainment, Inc. were all used and controlled by Gary Cioffi and were alter egos of each other.

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FIRST AMENDED COMPLAINT

1   and believed that Lincoln Computer destroyed digital records, including email

2   correspondence, spreadsheets, receipts and other documents evidencing Cioffi and

3   Garrity's fraud at USSE.  Cioffi failed to respect Lincoln Computer's distinct

4   existence by commingling monies from Lincoln Computer with the MSL Entities and

5   USSE.  On information and belief, Cioffi used USSE funds to pay Lincoln Computer

6   debts and vice-versa.  These transactions disguised Garrity and Cioffi's fraud and

7   USSE's true financial condition.

8       31.    Cioffi also has some ownership interest in an entity called Asset Tracers

9   LLC.  Cioffi wrote checks to USSE through Asset Tracers.  Asset Tracers' and

10  Lincoln Computer's funds were commingled with USSE funds.  The December 31,

11  2011 Consolidated Balance Sheet of USSE shows a loan from Lincoln Computer as a

12  liability of USSE.  The amount of the loan is listed as $115,000 as of September 30,

13  2011, and as $88,000 as of December 31, 2011 – indicating a repayment of $27,500.

14  A loan of $65,000 from Asset Tracers is listed as a USSE liability in all four quarters

15  of 2011.  On February 2, 2010, USSE paid Asset Tracers a check in the amount of

16  $57,354.75.  That check was listed in the "Cost of Goods Sold" column for USSE and

17  listed as a debit of USSE.  On January 1, 2010, an expense of $7,000 in "cash" is

18  listed as a credit of USSE.

19      32.    On information and belief, Cioffi and Garrity transferred funds from

20  USSE to other entities, including, but not limited to, Lincoln Computer and Asset

21  Tracers, in order to conceal their misappropriation of USSE monies.  On information

22  and belief, many of these transfers were made to satisfy false obligations – to pay for

23  services USSE never obtained.  Ultimately, Garrity and Cioffi pocket the

24  misappropriated funds.

25      33.    Cioffi's commingling of monies from his other entities did not start with

26  USSE.  Cioffi commingled monies from Asset Tracers with USSE's predecessor

27  entity, MSL Productions, LLC.  Cioffi freely transferred hundreds of thousands of

28  dollars between Asset Tracers and MSL Productions.  All the Defendants also

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FIRST AMENDED COMPLAINT

commingled and failed to segregate their corporate records.  For example, the MSL Entities' records were kept and maintained by USSE.

34.     Garrity and Cioffi authorized bonuses of $104,600 in the first quarter of 2011.  On information and belief, Garrity and Cioffi paid those bonuses to themselves.  At the end of the quarter during which the bonuses were paid, USSE had only $13,196 cash on hand.  USSE finished 2011 with <u>negative</u> $ 3,212,431 in net income after bonuses.   Garrity and Cioffi also spent an enormous amount of USSE money on mysterious "consulting" services – for example, in 2011, USSE spent $516,395 on "consulting."  On information and belief, USSE never received these phantom "consulting" services and the money was diverted to Cioffi and Garrity's personal use through Lincoln Computer, Asset Tracers and possibly other entities.

35.     Garrity and Cioffi also spent extravagant sums of money on entertainment.  The USSE financial statements show total travel expenses of $152,261 in 2011 – including $105,956 in the fourth quarter of 2011.  USSE spent $43,109 on entertainment in 2011.  To take just one example, on February 6, 2010, Gary Cioffi placed several lavish suite orders at the Super Bowl in Miami, including a $4,688.59 order of 8 bottles of Patron Silver tequila, 1 bottle of Johnny Walker Blue scotch, and twelve bottles of Veuve Cliquot champagne.  That same day, he also placed a $42,748.56 order of food and drinks, including a $3,000 sushi platter, four cases of beer, and $16,496.00 of "miscellaneous bvg."  Garrity and Cioffi spent untold sums of money on personal entertainment and other expenses.  During the period of 2007-2008, when the company was named MSL Sports, Cioffi and Garrity used company money to rent an apartment in New York City which they both personally used.

36.     On information and belief, Cioffi and Garrity diverted funds received from LABC pursuant to the License Agreement to their personal use or to conceal their ongoing fraud.

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FIRST AMENDED COMPLAINT

37.     As a result of USSE's cash flow issues, USSE was unable and unwilling to pay for expenses necessary to fund the production of the Program. Among other things, USSE was: 1) unable to fund travel to one of the planned location shoots early in the production, making it impossible to deliver the episodes described in the License Agreement; 2) unable to pay for digital editing equipment necessary to allow Scott to complete postproduction on Program episodes; 3) unable to pay third-party services working on the Program production and necessary to its completion; 4) at the end of its existence, USSE was unable to pay the salaries of Christopher and Glenn Scott or the amounts owed to independent contract editors brought in to complete the Program.  Several USSE employees directly involved with the Program repeatedly begged for additional funding necessary to complete the project, and warned that, absent these funds, USSE would be unable to complete the project.  Garrity and Cioffi were aware of these warnings, but did not do anything to ensure the Program series completed.  On information and belief, Cioffi and Garrity knew all along that they did not intend to complete the Program series and intended to abandon the Union Square business when it became impossible to extract further illicit looting or service debts they undertook with no intent of repaying.

38.     At all times during the relationship with LABC, Garrity and Cioffi did not reveal that USSE was unable to afford the Program's necessary production expenses.  Nor did they disclose the ongoing looting and asset diversion that caused USSE's financial distress.  Neither informed LABC during the negotiation of the License Agreement of their ongoing fraudulent scheme or intention to divert assets and funds from USSE to their personal use.  Had LABC been aware of Garrity and Cioffi's scheme, they would have never entered the License Agreement.  Had LABC been informed of the scheme during the performance of the License Agreement, it would have refused to make additional payments to USSE and would have immediately terminated the contract and sought legal recourse.  Garrity and/or Cioffi made a number of fraudulent misrepresentations (and continued to fail to disclose

FIRST AMENDED COMPLAINT

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

their fraudulent scheme) in order to induce LABC to continue making payments under the License Agreement and not sue USSE.  Garrity and Cioffi also concealed that USSE was their alter ego by generating fraudulent public accounting statements that did not reveal USSE's true financial condition, raising funds from investors sufficient to disguise their personal looting, failing to accurately disclose the diversion of corporate funds to their personal use, lying to USSE employees such as Ed Manetta and Christopher Scott about the status of the Program project and USSE's true intentions with respect to the project.  These USSE employees then passed the lies on to LABC, providing plausible and legitimate reasons for USSE's failure to timely complete the Program unrelated to Cioffi and Garrity's fraud.

39.     It was not until LABC took discovery in the Prior Action that it became aware of the true nature of USSE and Garrity/Cioffi's manipulation and looting. Garrity and Cioffi took steps to conceal their misdeeds, including but not limited to destroying USSE's email records and digital files.  During his deposition in the Prior Case, Garrity testified under oath that he had not received personal loans from USSE and was unaware of anyone who had received such loans.  However, USSE's publicly available financial statements show personal loans to both Garrity and Cioffi.

40.     On information and belief, Lincoln Computer received improper asset transfers from USSE without providing anything of value in exchange and commingled its assets with USSE.  Lincoln Computer was used as an instrument to continue and conceal Cioffi and Garrity's fraud, and on information and belief played a role in destroying USSE's electronic records after Garrity and Cioffi ceased to operate the business.

41.     Cioffi continues to operate Lincoln Computer and, based on representations made on its website, is currently setting up yet another sports marketing company in the same line of business as MSL and USSE.  On information and belief, Cioffi intends to resume his pattern of fraudulent conduct.

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FIRST AMENDED COMPLAINT

42.     There exists a sufficient unity of interest between Cioffi, Garrity and Union such that the separate personality of USSE no longer exists.  Cioffi and Garrity commingled their personal funds with USSE funds; failed to follow corporate formalities; failed to adequately capitalize USSE; failed to conduct arm's length transaction with USSE as, for example, when they set up the Orange Drive LLC entity and made personal loans to themselves; failed to maintain adequate corporate records and later destroyed corporate records; confused the records of Union Square and Cioffi's ostensibly separate legal entities; and operated Union Square as a shell or instrumentality for their fraudulent schemes.  As Union Square's entire purpose was to defraud innocent parties such as LABC, manifest unjust would result if the corporate form is not ignored and Cioffi and Garrity held personally liable for its misdeeds.

## Union Square's Breach

43.     Ultimately, despite its contractual obligation to deliver final masters of the Program, Union Square failed to deliver a single final episode to LABC.  Cioffi and Garrity's looting and misuse of Union Square funds made it impossible for the company to properly fund the project.  Seeking to protect its investment, and still relying on Union Square's representations, over the course of several months, LABC attempted to work with Union Square to help Union Square produce the Programs.  LABC agreed to revise and delay many of the delivery dates in the License Agreement.  But Union Square consistently failed to meet the revised delivery dates and frequently submitted footage and story arcs late or of such poor quality that they were unfit to air.  At all times, LABC clearly identified and expressed its concerns with the quality of Union Square's deliverables and inability to meet deadlines.  In response to LABC's concerns, Union Square promised to address and fix the quality issues and meet the new revised deadlines.  LABC never provided LABC with acceptable deliverables and never met any of the required deadlines.  In reality, Union Square was unable to address LABC's concerns because Cioffi and Garrity's

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FIRST AMENDED COMPLAINT

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

1    looting and self-dealing drained the company of the capital necessary to produce the

2    Program.  Ultimately, their misdeeds drove the company out of business before the

3    Program could be completed.

4          44.     On January 12, 2012, LABC sent a letter to Union Square in which

5    LABC noted its numerous voluntary attempts to accommodate Union Square's delays

6    and continued requests for extensions and set a final deadline for delivery of March 1,

7    2012, for the 2D/3D final program masters for episodes 1-5.  In the letter, LABC

8    reserved all rights and remedies to it and made clear that the extensions were simply

9    reasonable, voluntary accommodations to Union Square and not a waiver of LABC's

10   rights to the prior delivery deadlines.  Yet, by March 26, 2012, Union Square had

11   provided only 2D rough-cut episodes for review to LABC – a process that Union

12   Square should have started well in advance of the final delivery date for the masters.

13   Because of Union Square's inability to meet the program quality criteria and the

14   deadlines of the License Agreement, LABC exercised its right to terminate the

15   License Agreement on March 26, 2012.  At that time, LABC also stated that it would

16   seek recoupment of the $262,000 advanced to Union Square as provided by the

17   License Agreement.

18         45.     On information and belief, key man Scott's employment relationship

19   with Union Square ended prior to LABC's termination of the License Agreement.

20   Scott is no longer employed by Union Square.

21         46.     Union Square has still not delivered a single final episode to LABC and

22   has also refused to refund any of the $262,000 advanced by LABC.  Union Square

23   ceased responding to LABC's communications well before the Prior Lawsuit was

24   filed.

25   **FIRST CAUSE OF ACTION**

26   **BREACH OF CONTRACT**

27   **(Against All Defendants)**

28

47.     Plaintiff repeats and re-alleges each preceding paragraph as if set forth in full herein.

48.     As alleged herein, Union Square executed the License Agreement on March 11, 2011.

49.     LABC has performed all of its obligations required by the License Agreement, except where such obligations were excused by Union Square's breach. Specifically, LABC caused all payments required by the License Agreement to be paid to Union Square until Union Square's breaches excused LABC's performance.

50.     The License Agreement required Union Square to produce 10 episodes and a one-hour documentary *Gone Until December* by December 29, 2011.  Union Square breached the License Agreement by, among other things, failing to deliver a single finished master of the Programs to LABC, consistently meeting the delivery deadlines set forth in the License Agreement, firing key man Scott, and failing to meet the quality standards for the Programs.  Ultimately, Union Square failed to provide LABC with the product that was the subject and purpose of the License Agreement.

51.     As a direct and proximate breach of the License Agreement, LABC has suffered damages to be proved at trial, in the amount of at least $262,000.

## SECOND CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against All Defendants)

52.     Plaintiff repeats and re-alleges each preceding paragraph as if set forth in full herein.

53.     Implied in the License Agreement is a covenant of good faith and fair dealing.  Pursuant to that covenant, Union Square agreed to not do anything to deprive LABC of the benefit of the License Agreement.

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

54.     LABC has performed all of its obligations required by the License Agreement except where such obligations were excused by the breach of Union Square.

55.     Through its actions described above, Union Square has deprived LABC of the benefit of the License Agreement.  Union Square failed to cooperate with LABC in the performance of the License Agreement, has failed to communicate with LABC regarding the License Agreement and has failed to report material information to LABC regarding the License Agreement, including but not limited to failing to disclose that Key Man Christopher Scott is no longer employed by Union Square. Union Square's breach of the covenant has prevented LABC from all benefit expected from the License Agreement.

56.     As a direct and proximate result of the breach of the implied covenant of good faith and fair dealing in the License Agreement by Union Square, LABC has suffered damages to be proved trial, but which amount is not less than $262,000.

### THIRD CAUSE OF ACTION
### FRAUD
### (Against Cioffi and Garrity)

57.     Plaintiff repeats and re-alleges each preceding paragraph as if set forth in full herein.

58.     As described above, Union Square and its executives Cioffi and Garrity made a number of affirmative misrepresentations to LABC regarding the programs and concealed material facts concerning the programs.  Union Square falsely promised to complete the programs pursuant to the schedule specified in the License Agreement, but had no intention of actually completing the programs by the dates listed in the License Agreement.  At the time the misrepresentations were made, Union Square knew or should have known them to be false.

59.     Further, Cioffi and Garrity misrepresented the nature of USSE, by holding it out as a legitimate television production business prior to and while the License

FIRST AMENDED COMPLAINT

1  Agreement was performed.  Cioffi and Garrity failed to disclose material information

2  to LABC about the true nature of USSE: namely, that the corporation existed in order

3  for them to improperly avoid prior business liabilities and divert corporate assets to

4  their own personal use.  At the times Cioffi and Garrity failed to disclose this

5  information, they understood that LABC would have considered this information

6  material and would have: 1) not entered into the License Agreement with USSE; or 2)

7  immediately terminated the License Agreement and sought legal redress.

8    60.    These misrepresentations and false promises were essential in LABC's

9  decision to enter into and continue the performance of the License Agreement.

10    61.    These misrepresentations and false promises were made with the

11  intention to induce LABC to enter into the License Agreement and to continue

12  performing the License Agreement.

13    62.    LABC justifiably relied on the misrepresentations and false promises of

14  Garrity and Cioffi in entering into the License Agreement and continuing to perform

15  the License Agreement.

16    63.    As an actual and proximate cause of these misrepresentations and false

17  promises, LABC has been damaged in an amount to be proven at trial.

18    64.    LABC is informed and believes, and on that basis alleges, that Cioffi and

19  Garrity engaged in the conduct described above with fraudulent intent, and with a

20  conscious or reckless disregard for LABC's rights and welfare.  Garrity and Cioffi

21  thereby acted toward LABC with malice, oppression and fraud.  Accordingly,

22  Plaintiff is entitled to an award of punitive and exemplary damages against Garrity

23  and Cioffi in an amount sufficient to punish and make an example of Garrity and

24  Cioffi and to deter them and others similarly situated from engaging in similar

25  wrongful conduct in the future.

26  ## **PRAYER**

27    WHEREFORE, Plaintiff prays for judgment against defendant as follows:

28    1.    Compensatory damages, in an amount to be proven at trial;

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

18                                                    FIRST AMENDED COMPLAINT

2.  For costs of suit;

3.  For attorney's fees as permitted by law;

4.  For pre- and post-judgment interest at the legal rate;

5.  For restitution, in an amount to be proven at trial;

6.  For punitive and exemplary damages; and

7.  For such other and further relief that this Court deems proper.

DATED:  October 15, 2015                    BAKER MARQUART LLP


                                            By:/s/ Ryan G. Baker_____
                                               Ryan G. Baker
                                               Attorneys for Plaintiff LABC
                                               Productions LLC